# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| GLITCH PRODUCTIONS PTY LTD,<br><br>                Plaintiff,<br><br>  v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>                Defendants. | Case No. 25-cv-00161<br><br>**Judge Gretchen S. Lund**<br><br>**Magistrate Judge John E Martin** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Glitch Productions Pty Ltd ("Glitch" or "Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery.

# Table of Contents

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 1

    a. Glitch's Intellectual Property and Genuine Products ............................................. 1

    b. Defendants' Unlawful Activities ............................................................................ 3

III. ARGUMENT ..................................................................................................................... 4

    a. Standard for Temporary Restraining Order and Preliminary Injunction ............... 5

    b. Glitch Will Likely Succeed on the Merits .............................................................. 6

        i. *Glitch Will Likely Succeed on Its Trademark Infringement and Counterfeiting and False Designation of Origin Claims* ............................................................................ 6

    c. There Is No Adequate Remedy At Law, and Glitch Will Suffer Irreparable Harm in the Absence of Preliminary Relief ............................................................................ 8

    d. The Balancing of Harms Tips in Glitch's Favor, and the Public Interest is Served by Entry of the Injunction ............................................................................................... 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................ 10

    a. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Glitch Trademarks is Appropriate ............................................ 10

    b. Preventing the Fraudulent Transfer of Assets Is Appropriate ............................. 10

    c. Plaintiff Is Entitled to Expedited Discovery ........................................................ 12

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ....................................... 13

VI. CONCLUSION ............................................................................................................... 13

**MEMORANDUM OF LAW**

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, and false designation of origin against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products using infringing and counterfeit versions of Glitch's federally registered trademarks (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated operation and have targeted sales to Indiana residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Indiana residents can purchase Unauthorized Products. The e-commerce stores operating under the Seller Aliases share identifiers establishing a logical relationship between them. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet, and the cover afforded by international borders, to violate Glitch's intellectual property rights with impunity. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal their identities and the full scope and interworking of their operation. Glitch is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests this Court to issue an *ex parte* Temporary Restraining Order.

II.     **STATEMENT OF FACTS**
       a. <u>Glitch's Intellectual Property and Genuine Products</u>

Plaintiff, Glitch Productions Pty Ltd, was formed in 2017 and is an Australian web animation

studio and entertainment production and distribution company specializing in the development, production, and distribution of entertainment content. *See* Declaration of Stewart Miller (the "Miller Declaration") at ¶ 3. Glitch has its principal place of business in Australia. *Id*. Glitch's roster of properties includes famous web series such as Murder Drones, Meta Runner, Sunset Paradise, SMG4, and the subject of this action, The Amazing Digital Circus. *Id*. at ¶ 4.

*The Amazing Digital Circus*, created by Gooseworx, follows a cast of amnesiac humans that are trapped in digital, toy-like, avatar bodies which inhabit a digital circus. *Id*. at ¶ 5. One character, Caine, the supposed ringmaster of the digital world, thinks of random tasks, which seem menial on the surface but end up being life-threatening in the end, for the characters to do. *Id*. These tasks are designed to stimulate the casts' minds to distract them from the fact that they are forever trapped inside the digital world. *Id*. Another character, Pomni, the newest addition to the cast, struggles between finding a way to escape and helping her fellow prisoners, who have already given up on the notion, in these dangerous tasks. *Id*. *The Amazing Digital Circus* is one of Glitch's most popular shows. *Id*. at ¶ 6. The pilot episode released on YouTube on October 13, 2023, which has since been watched over 300 million times. *Id.*

Glitch markets and sells a variety of products, including plushies, posters, clothing, figurines, keychains, pins, vinyl records, acrylic stands, notebooks, pens, hats and stickers (collectively, "Glitch Products"). *Id.* at ¶ 7. Glitch Products have become enormously popular and even iconic, driven by Glitch's quality standards and innovative designs. *Id*. Among the purchasing public, Glitch Products are instantly recognizable as such. *Id*. The Amazing Digital Circus brand has become a global success and Glitch Products are among the most recognizable in the world. *Id*. Glitch Products are distributed and sold to consumers through Plaintiff's official website, www.glitchproductions.store. *Id*.

2

Glitch has continuously used the THE AMAZING DIGITAL CIRCUS and ANIMATEZ trademarks, and other trademarks, and has continuously sold products under its trademarks (collectively, the "Glitch Trademarks"). *Id.* at ¶ 8. The Glitch Trademarks are registered with the United States Patent and Trademark Office. *Id.* at ¶ 9. The Glitch Trademarks are valid, subsisting, and in full force and effect. *Id.* The Glitch Trademarks are exclusive to Glitch and are displayed extensively on Glitch Products and in marketing and promotional materials. *Id.* at ¶ 10. The Glitch Trademarks are also distinctive when applied to Glitch Products, signifying to the purchaser that the products come from Glitch and are manufactured to Glitch's quality standards. *Id.* The Glitch Trademarks constitute *prima facie* evidence of their validity and of Glitch's exclusive right to use the Glitch Trademarks pursuant to 15 U.S.C. § 1057(b). The Glitch Trademarks are also famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* at ¶ 11.

b. <u>Defendants' Unlawful Activities</u>

The success of The Amazing Digital Circus brand has resulted in significant counterfeiting of the Glitch Trademarks. *Id.* at ¶ 15. Because of this, Glitch has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. *Id.* Recently, Glitch has identified many fully interactive e-commerce stores offering products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized Products to consumers in this Judicial District and throughout the United States. *Id.*

Glitch's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases, similarities between the Unauthorized Products sold by Defendants, and common tactics employed to evade enforcement efforts, establish a logical relationship among the Defendants and demonstrate that Defendants are

3

interrelated. *See id.* at ¶¶ 18-25.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Glitch's reputation and the goodwill symbolized by the Glitch Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from the sale of Unauthorized Products and would preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Martin F. Trainor (the "Trainor Dec.") at ¶¶ 2–5. District courts in the Seventh Circuit have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive relief … can be granted"). As such, Glitch respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants

4

directly target their business activities at consumers in the United States, including Indiana, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Indiana residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Indiana, accept payment in U.S. dollars, and sell Unauthorized Products to residents of Indiana. *See* Complaint at §§ 2, 22, 30-31. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. Aug. 16, 2022) ("[I]n assessing purposeful direction, what matters is [the defendant's] structuring of its own activities so as to target the [Indiana] market"). As such, each Defendant is committing tortious acts in Indiana, is engaging in interstate commerce, and has wrongfully caused Glitch substantial injury in Indiana.

      a. <u>Standard for Temporary Restraining Order and Preliminary Injunction</u>

District courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *Black v. Friedrichsen*, No. 1:19-CV-307-TLS-SLC, 2022 WL 374502, at *2 (N.D. Ind. Feb. 8, 2022) (quoting *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the

injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. V. Mead Johnson & Co.*, 971 F. 2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need to favor the movant's position. *Id*.

> b. <u>Glitch Will Likely Succeed on the Merits</u>
>> i. *Glitch Will Likely Succeed on Its Trademark Infringement and Counterfeiting and False Designation of Origin Claims*

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, Plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a Plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

The Glitch Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. The Glitch Trademarks have been continuously used and never abandoned. Miller Dec. at ¶ 11. The registrations for the Glitch Trademarks constitute *prima facie* evidence of their validity and of Glitch's exclusive right to use the Glitch Trademarks pursuant to § 1057(b). Furthermore, Glitch has not licensed or authorized Defendants to use any of the Glitch Trademarks, and none of the Defendants are authorized retailers of Glitch Products. *Id.* at ¶ 18.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a

6

presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from certain Defendants' use of the Glitch Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products/services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Glitch has submitted extensive documentation showing that certain Defendants are selling Unauthorized Products that look similar to Glitch Products and use infringing and counterfeit marks identical to the Glitch Trademarks. *See* Miller Declaration at ¶ 16. These Defendants sell products using the Glitch Trademarks to the same consumers that Glitch targets. *Id.* at ¶¶ 7, 17. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing Glitch Products from Unauthorized Products. Defendants are intentionally trying to induce consumers to purchase Unauthorized Products by advertising Unauthorized Products using the Glitch Trademarks. *Id.* at ¶ 19. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as Glitch Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Glitch is likely to establish a prima facie case of trademark infringement and counterfeiting and false designation of origin.

### c. There Is No Adequate Remedy At Law, and Glitch Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Because Glitch has shown a likelihood of success on the merits on its trademark infringement claim, Glitch is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (quoting *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971)). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979) (quoting 4 Calmann *Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970).

Defendants' unauthorized use of the Glitch Trademarks has and continues to irreparably harm Glitch through diminished goodwill and brand confidence, damage to Glitch's reputation, loss of exclusivity, and loss of future sales. Miller Dec. at ¶¶ 26–30. The extent of the harm to Glitch's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' counterfeiting activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) ("Because of the difficulty in assessing the damages associated

with a loss of goodwill … [Plaintiff] lacked an adequate remedy at law").

For the reasons state above, Glitch will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b). Miller Dec. at ¶ 31.

    d. <u>The Balancing of Harms Tips in Glitch's Favor, and the Public Interest is Served by Entry of the Injunction</u>

As noted above, if the Court is satisfied that Glitch has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Glitch will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (quoting *American Home Prods. Corp. v. Johnson Chem. Co.,* 589 F.2d 103, 107 (2d Cir. 1978 ) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*., 929 F. Supp. 473, 478 (D.D.C. 1996).

As Glitch has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Thus, the balance of equities tips decisively in Glitch's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Glitch's approval and endorsement. In this case, the injury to the public is significant, and the injunctive

9

relief Glitch seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a).

   a. <u>A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Glitch Trademarks is Appropriate</u>

Glitch requests a temporary injunction requiring Defendants to immediately cease all use of the Glitch Trademarks or substantially similar marks on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to The Amazing Digital Circus brand and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Glitch Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Glitch is currently unaware of the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell, and offer to sell Unauthorized Products. District courts in the Seventh Circuit have authorized immediate injunctive relief in similar cases involving trademark counterfeiting and infringement. *See, e.g., Glitch Productions Pty, Ltd v. The P'ships*, No. 25-cv-01098 (N.D. Ill. Feb. 7, 2025) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order); *Warner Bros. Entertainment Inc. v. The P'ships*, No. 25-cv-02205 (N.D. Ill. Mar. 17, 2025) (unpublished) (same).

   b. <u>Preventing the Fraudulent Transfer of Assets Is Appropriate</u>

Glitch requests an *ex parte* restraint of Defendants' assets so Glitch's right to an equitable accounting of Defendants' profits from Unauthorized Product sales is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Glitch meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Additionally, Glitch has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Glitch is entitled, "subject to the principles of equity, to recover … defendant's profits." Glitch's Complaint seeks, among other relief, that Defendants account for and pay to Glitch all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Glitch's request for a prejudgment asset freeze to preserve relief sought by Glitch.

The Court in *LeSEA, Inc. v. LeSEA Broadcasting Corporation* recognized that, despite the general rule that a court cannot restrain a defendant's assets pre-judgment, "a restraint on assets is available when a plaintiff seeks equitable relief." *LeSEA*, 2022 WL 621039, at *2 (N.D. Ind. Mar. 3, 2022) (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999) (further internal citations omitted). While the *LeSEA* court declined to enter an asset restraint order because the plaintiff failed to make any showing that the defendant had any intention to hide its assets or destroy its property, that is not the case here. As explained in the Trainor

11

Declaration, foreign e-commerce store owners and/or operators peddling counterfeit goods often move funds from their financial accounts to offshore bank accounts outside the jurisdiction of the Court once notice of the lawsuit is received. *See* Trainor Dec. at ¶¶ 2-5; *see also, e.g., Chrome Cherry Ltd. v. The P'Ships*, 2021 WL 6752296 at * 2 (N.D. Ill. Oct. 20, 2021) ("Plaintiff has demonstrated that should Defendants be informed of this proceeding before a temporary restraining order could issue, Defendants will likely register new e-commerce stores under new aliases and move assets to offshore bank accounts outside the jurisdiction of the Court"). Further, district courts in the Seventh Circuit have repeatedly entered asset restraining orders in factually analogous cases asserting trademark infringement and counterfeiting claims. *See Glitch Productions Pty, Ltd v. The P'ships*, No. 25-cv-01098 (N.D. Ill. Feb. 7, 2025) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order); *Warner Bros. Entertainment Inc. v. The P'ships*, No. 25-cv-02205 (N.D. Ill. Mar. 17, 2025) (unpublished) (same).

Glitch has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore accounts. Accordingly, an asset restraint is proper.

    c.   <u>Plaintiff Is Entitled to Expedited Discovery</u>

The United States Supreme Court has held that federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978). Courts have wide latitude in determining whether to grant a party's request for discovery. *Hay v. Indiana State Bd. of Tax Com'rs*, 312 F.3d 876, 882 (7th Cir. 2002). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2)).

12

Glitch respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Glitch's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Glitch Productions Pty, Ltd v. The P'ships*, No. 25-cv-01098 (N.D. Ill. Feb. 7, 2025) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order); *Warner Bros. Entertainment Inc. v. The P'ships*, No. 25-cv-02205 (N.D. Ill. Mar. 17, 2025) (unpublished) (same). Glitch's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Glitch respectfully requests that expedited discovery be granted.

## V.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Glitch's evidence of trademark infringement and counterfeiting, and false designation of origin claims, Glitch respectfully requests this Court require Glitch to post a bond of no more than ten thousand U.S. dollars ($10,000.00), which is aligned with the bond requirement set by other district courts in the Seventh Circuit. *See, e.g., Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015) ($10,000 bond); *Glitch Productions Pty, Ltd v. The P'ships*, No. 25-cv-01098 (N.D. Ill. Feb. 7, 2025) (unpublished) (same); *Warner Bros. Entertainment Inc. v. The P'ships*, No. 25-cv-02205 (N.D. Ill. Mar. 17, 2025) (unpublished) (same).

## VI.  CONCLUSION

Defendants' unlawful operations are irreparably harming Glitch's business, its The Amazing

Digital Circus brand, and United States consumers. In view of the foregoing and consistent with previous similar cases, Glitch respectfully requests that this Court enter a TRO in the form submitted herewith.

Dated this 9th day of April 2025.                     Respectfully submitted,


/s/ Martin F. Trainor
Martin F. Trainor
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com

*Counsel for Plaintiff Glitch Productions Pty Ltd*